# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANNY DUVAL PALACIO CONTRERAS,<br><br>    Petitioner,<br><br>    v.<br><br>JOSEPH D. MACDONALD, Plymouth County Sheriff;<br>TODD M. LYONS, Acting Director, U.S. Immigration<br>and Customs Enforcement; MICHAEL KROL, New<br>England Field Office Director, U.S. Immigration and<br>Customs Enforcement; PATRICIA HYDE, Director,<br>Boston Field Office, U.S. Immigration and Customs<br>Enforcement; KRISTI NOEM, Secretary, U.S.<br>Department of Homeland Security; PAMELA BONDI,<br>U.S. Attorney General; DONALD J. TRUMP, President,<br>United States of America,<br><br>    Respondents. | Civil Action No.<br>25-cv-11652-JEK |

## RESPONDENTS' OPPOSITION TO
## PETITION FOR WRIT OF HABEAS CORPUS

Respondents, by and through their attorney, Leah B. Foley, United States Attorney for the

District of Massachusetts, submit this opposition to Petitioner Danny Duval Palacios Contreras'

Habeas Petition.  Doc. No. 1.  Respondents respond to the Petition as contemplated by Rules 4

and 5 of the Federal Rules Governing Section 2254 and this Court's Service Order.[1]  Doc. No. 4.

## INTRODUCTION

This Court cannot extend the writ of habeas corpus unless an individual "is in custody in

violation of the Constitution or laws or treaties of the United States".  28 U.S.C. § 2241(c)(3).

---

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

Here, Petitioner fails to carry his burden to demonstrate that his detention by U.S. Immigration and Customs Enforcement ("ICE") violates the Immigration and Nationality Act ("INA"), its implementing regulations, or the Constitution.

Petitioner is an applicant for admission pursuant to 8 U.S.C. § 1225(a)(1) because he was arrested after he illegally crossed the southern border in 2022. As such, ICE's detention of Petitioner is statutorily required by 8 U.S.C. § 1225(b) while in removal proceedings before an Immigration Judge ("IJ"). *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (8 U.S.C. § 1225(b) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin.").

Further, the Supreme Court, the U.S. Court of Appeals for the First Circuit, and this Court have held that detention of applicants for admission like Petitioner is constitutional and such aliens are entitled only to the procedural protections and process provided by statute. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("*Mezei*") (Explaining that "an alien on the threshold of entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'") (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (Alien detained soon after illegally entering the United States "has only those rights regarding admission that Congress has provided by statute" and "the Due Process Clause provides nothing more…"); *Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir. 1987) (Explaining that "the detention of the appellants is entirely incident to their attempted entry into the United States and their apparent failure to meet the criteria for admission—and so, entirely within the powers expressly conferred by Congress."); *Diallo v. Gillen*, No 1:25-CV-11500-JEK, ECF No. 12 (D. Mass. June 13, 2025) (Dismissing habeas

petition filed by applicant for admission who failed to demonstrate detention under Section 1225(b) was "in violation of any federal statute or in violation of his Fifth Amendment due process rights.").

The Petition also fails to the extent it seeks an order setting aside Respondents' purported "policy of transfer[ing] detained noncitizens to frustrate judicial proceedings."  Doc. No. 1, ¶¶ 30-31.  Petitioner does not identify any final agency action as required to establish a claim under the Administrative Procedure Act ("APA").  *See* 5 U.S.C. § 704.  Nor does Petitioner have standing to challenge any purported policy because ICE has not transferred him.  Petitioner's Fourth Amendment claim also fails as ICE obtained a warrant in support of his arrest.

Petitioner's detention comports with statute, regulation, and the Constitution and therefore this Petition must be dismissed.

## BACKGROUND

**A. Legal Background for Aliens Seeking Admission to the United States.**

In exercising its plenary power over immigration, Congress delegated to the Secretary of Homeland Security the responsibility for "[s]ecuring the borders," enforcing the immigration laws, and "control[ling] and guard[ing] the boundaries and borders of the United States against the illegal entry of aliens."  6 U.S.C. §§ 202(2) & (3); 8 U.S.C. § 1103(a)(5).

An applicant for admission is "[a]n alien present in the United States who has not been admitted or who arrives in the United States [] whether or not at a designated port of arrival …." 8 U.S.C. § 1225(a)(1).  As explained by the Supreme Court, "an alien who tries to enter the country illegally is treated as an 'applicant for admission' and an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry' into the United States." *Thuraissigiam*, 591 U.S. at 140.  Stated another way, an "alien who arrives at a 'port of entry,' *i.e.* a place where

3

the alien may lawfully enter, must apply for admission.  An alien [] who is caught trying to enter at some other spot is treated the same way." *Id.* at 108.  Such applicants for admission—"even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* at 139 (quoting *Mezei*, 345 U.S. at 215).

Pursuant to 8 U.S.C. § 1225, immigration officials have discretion to place applicants for admission in either expedited removal proceedings under Section 1225(b)(1) or full removal proceedings under 8 U.S.C. § 1229a when an asylum application can be filed.  *Bollat Vasquez v. Wolf*, 460 F. Supp. 3d 99, 114 (D. Mass. 2020).  Under either approach, Section 1225 authorizes detention of such individuals "throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Jennings*, 583 U.S. at 302; *Thuraissigiam*, 591 U.S. at 111 ("Whether an applicant who raises an asylum claim receives full or only expedited review, the applicant is not entitled to immediate release.")[2]

While an applicant for admission is not entitled to release or a bond hearing by statute or regulation, the Secretary, acting through ICE and U.S. Customs and Border Protection ("CBP"), has discretion to parole applicants for admission from custody.  *See* 8 U.S.C. § 1182(d)(5).  Parole is not, however, regarded as an "admission" of the alien.  8 U.S.C. § 1182(d)(5)(A).  When the purpose of the parole has been served as determined by the agency, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission into the

---

[2] An IJ "may not" conduct a bond hearing to determine whether an applicant for admission should be released into the United States during removal proceedings. 8 C.F.R. § 1003.19(h)(2)(i)(B) ("[A]n immigration judge may not redetermine conditions of custody imposed by the Service with respect to . . . [a]rriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act.")

United States." *Id.* A grant of parole is terminated automatically without written notice at the expiration of the time for which parole was authorized. 8 C.F.R. § 212.5(e)(1)(ii). Alternatively, parole is terminated with written notice to the individual "upon accomplishment of the purpose for which parole was authorized" or when in an ICE official's "opinion … neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States". *Id.* § 212.5(e)(2)(i). The issuance of a Notice to Appear ("NTA") constitutes the required written notice of termination of parole and such alien "shall be restored to the status that he or she had at the time of parole." *Id.* Once parole has been terminated, "[a]ny further inspection or hearing shall be conducted under section 235 or 240 of the Act". *Id.*

### B. Factual and Procedural Background.

Petitioner is a native and citizen of Nicaragua who illegally entered the United States across the southern border without being inspected and admitted or paroled on or about November 11, 2022 near Yuma, Arizona. *See* Declaration from Assistant Field Office Director, Keith Chan, Exh. A, ¶¶ 7-8. CBP encountered and arrested Petitioner as he was not in possession of a valid entry document. *Id.*, ¶ 8. CBP paroled Petitioner from custody pursuant to 8 U.S.C. § 1182(d)(5) and instructed him to report to ICE. *Id.*, ¶ 9.

On February 13, 2023, ICE issued the Petitioner with a NTA in the Boston Immigration Court and therefore terminated his parole. *Id.*, ¶ 10. ICE arrested and detained Petitioner on June 5, 2025 after ICE conducted record checks that revealed that Petitioner had been arrested by the Lynn Police Department on June 3, 2025 on charges of Engaging in Sexual Conduct for a Fee. *Id.*, ¶¶ 12-13. ICE issued a Form I-200, Warrant of Arrest of Alien in support of the arrest. *Id.,* ¶ 13. Petitioner remains in removal proceedings. *Id.*, ¶ 15.

### C. Procedural Background.

Petitioner filed this action on June 6, 2025.  Doc. No. 1.  He asserts his detention violates the Constitution and the APA.  *Id.*, ¶ 2.  He claims his detention is "unjustified" under the Fifth Amendment and the "government must provide argument that the Petitioner cannot be safely released back to his community." *Id.*, ¶ 24.  He also claims that he was arrested and detained in violation of the Fourth Amendment.  *Id.*, ¶ 28.  Concerning the APA claim, he asserts that ICE has "a policy of moving detained noncitizens from facilities in their home states to frustrate judicial procedure and more swiftly effectuate the removal of those noncitizens without interference from the noncitizens' counsel." *Id.*, ¶ 30.

In his Prayer for Relief, Petitioner asks this Court to order his release, prohibit his transfer from Massachusetts, and order that ICE transport Petitioner to and from any state court or immigration court proceeding.  *Id.*, PRAYER FOR RELIEF.

## LEGAL STANDARD

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted).

A habeas petitioner bears the burden to establish entitlement to a writ of habeas corpus by proving that his custody violates the Constitution, laws, or treatises of the United States.  *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

## ARGUMENT

### A.    Petitioner is Lawfully Detained Pursuant to 8 U.S.C. § 1225(b).

Petitioner, as an "alien present in the United States who has not been admitted or who arrives in the United States" is an applicant for admission as defined by 8 U.S.C. § 1225(a)(1).

As explained by the Supreme Court in *Jennings*, Section 1225(b) "mandate[s] detention of applicants for admission until proceedings have concluded." 538 U.S. at 297. If immigration authorities issue a NTA to an applicant for admission, such individual is subject to detention pursuant to 8 U.S.C. § 1225(b)(2)(A) while in removal proceedings. In declining to find a statutory requirement to conduct bond hearings for applicants for admission, the Supreme Court explained that "nothing in the statutory text imposes any limit on the length of detention … and neither [statutory provision] says anything whatsoever about bond hearings." *Id.*

While CBP previously exercised its discretion under 8 U.S.C. § 1182(d)(5) to parole Petitioner from its custody in 2022, such parole is not regarded as an admission. Further, Petitioner's parole was terminated in 2023 per 8 C.F.R. § 212.5(e)(2)(i) with ICE's issuance of a NTA and at any time thereafter ICE was authorized to return Petitioner "to the custody from which he was paroled" and proceed to consider his case "in the same manner as that of any other application for admission to the United States." 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 212.5(e)(2)(i).

ICE is therefore mandated by statute to detain Petitioner without access to a bond hearing while in removal proceedings. The Board of Immigration Appeals, in *Matter of Q. Li,* 29 I. & N. 66 (2025) recently held that an alien with a factually and procedurally similar background to Petitioner was detained pursuant to 8 U.S.C. § 1225(b) and not eligible for a bond hearing. In that case, the alien similarly crossed the southern border without being inspected and admitted or paroled and was thereafter arrested and paroled from custody. *Id.* at 67. Years later, ICE arrested the alien and detained her for purposes of removal proceedings. *Id.* The BIA determined that the alien was subject to detention under 8 U.S.C. § 1225(b), rather than 8 U.SC. § 1226(a), and therefore ineligible to seek a bond hearing, because the alien was an applicant for

admission who had been arrested and detained while arriving in the United States. *Id.* at 69. The BIA recognized that the parole authority was the only means for release of such an individual, and held that upon termination of parole, such alien is subject to custody under 8 U.S.C. § 1225(b) "pending the completion of removal proceedings." *Id.* at 70.

Petitioner's detention while in removal proceedings is mandated by 8 U.S.C. § 1225(b)(2)(A) and therefore he is not in custody in violation of law so as to allow this Court to extend the writ of habeas corpus as requested.

**B.     Petitioner's Detention is Constitutional.**

Petitioner's claim that his detention violates the Fifth Amendment's Due Process Clause (Doc. No. 1, ¶¶ 24-26) is without merit as the Supreme Court has held that applicants for admission such as Petitioner are only entitled to the protections set forth by statute and that "the Due Process Clause provides nothing more." *Thuraissigiam*, 591 U.S. at 140. Petitioner does not allege any deprivation of any of the protections set forth by Section 1225 and therefore his due process claim fails. Additionally, the Supreme Court has repeatedly held that "[d]etention during deportation proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003).

**1.  Applicants for Admission to the United States have Limited Due Process Rights**.

The Supreme Court has long recognized that "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). Accordingly, "certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographical borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

The Supreme Court has explained that applicants for admission lack any constitutional due process rights with respect to admission aside from the rights provided by statute: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," *Mezei*, 345 U.S. at 212, and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination". *Shaughnessy*, 338 U.S. at 543. In *Mezei*, for example, the Supreme Court held that a returning lawful permanent resident's detention at the border without a hearing to effectuate his exclusion from the United States did not violate due process. *Mezei*, 345 U.S. at 206. The Court reiterated that "the power to expel or exclude aliens" is a "fundamental sovereign attribute exercised by the Government's political departments" that is "largely immune from judicial control." *Id.* at 210. The Court recognized that "once passed through our gates, even illegally," aliens "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Id.* at 212. But "an alien on the threshold of initial entry stands on a different footing" than an alien who has effected an entry into the United States. *Id.*

The Supreme Court reaffirmed "[its] century-old rule regarding the due process rights of an alien seeking initial entry" in *Thuraissigiam*, explaining that an individual who illegally crosses the border—like Petitioner—is an applicant for admission and "has only those rights regarding admission that Congress has provided by statute." 591 U.S. at 139-40. The *Thuraissigiam* Court explained that "[w]hile aliens who have established connections in this country have due process rights in deportation proceedings, the Court held long ago that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id.* at 107.

As explained by the Court, "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country …". *Thuraissigiam*, 591 U.S. at 139.  The Court held that this same "threshold" rule applies to individuals, like Petitioner, who are apprehended after trying "to enter the country illegally" since by statute, such individuals are also defined as applicants for admission.  *Id.* at 139-40.  Treating such an individual in a more favorable manner than an individual arriving at a port of entry would "create a perverse incentive to enter at an unlawful rather than a lawful location" and therefore the Supreme Court rejected the argument that an individual who "succeeded in making it 25 years into U.S. territory before he was caught" should be entitled to additional constitutional protections.  *Id.* at 140. The Court was clear that all applicants for admission, "even those paroled elsewhere in the country for years pending removal" (*id.* at 139) "have no entitlement to procedural rights other than those afforded by statute."  *Id.* at 107.

The First Circuit also held that detention of an alien seeking admission to the United States does not violate statute or due process in *Amanullah*, 811 F.2d at 9.  In that case, the Court explained that "the detention of the appellants is entirely incident to their attempted entry into the United States and their apparent failure to meet the criteria for admission—and so, entirely within the powers expressly conferred by Congress."  *Id.*  The appellants were detained pursuant to § 1225(b) and the Court found no due process violation in the denial of their parole applications "pending the ultimate (seasonable) resolution of the exclusion/asylum proceedings" as there was "no suggestion of unwarranted governmental footdragging in these cases" and because "prompt attention appears to have been paid to the administrative aspects of exclusion and asylum."  *Id.*

Petitioner fails to address the Supreme Court and First Circuit decisions that govern this case and foreclose the relief he seeks. In seeking release to remedy an alleged due process violation, Petitioner ignores *Mezei*'s holding, reaffirmed in *Thuraissigiam*, that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Mezei*, 345 U.S. at 212. Here, Section 1225(b) makes plain that if a NTA is issued to place an applicant for admission into removal proceedings, such individual "shall be detained" during such proceedings. 8 U.S.C. § 1225(b)(2)(A). As such, Petitioner is not entitled to release because "an alien in [Petitioner's] position has only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140. Petitioner provides no support for the assertion that ICE, to ensure the constitutionality of his detention, "must provide argument that the Petitioner cannot be safely released back into his community." Doc. No. 1, ¶ 24. As the First Circuit has explained, "it is Congress—not the judiciary—that has the responsibility of prescribing a framework for the vindication of those rights." *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 24 (1st Cir. 2007). Explained further by the First Circuit, "[w]hen Congress speaks clearly and formulates a regime that satisfies constitutional imperatives, the courts must follow Congress's lead." *Id.* Here, Congress has established a statutory framework where Petitioner can seek release from detention through a parole application while pursuing his asylum application before the Immigration Court, but has not authorized bond hearings or any requirement that ICE justify his detention on account of public safety risk, and as such, Petitioner is not entitled to the relief he requests.[3]

---

[3] Petitioner, however, can ask ICE to exercise its discretion and parole him from its custody. *See Alexandre v. Decker*, No. 17CIV5706GBDKHP, 2019 WL 1407353, at *5 (S.D.N.Y. Mar. 28, 2019) (concluding that "the parole procedure, as currently enforced, satisfies due process for arriving aliens because (1) they are differently situated than individuals within

District courts within this district and around the country routinely find no due process violation for the detention of individuals subject to 8 U.S.C. § 1225(b).  *See e.g.*, *Diallo v. Gillen*, No 1:25-CV-11500-JEK, ECF No. 12 (D. Mass. June 13, 2025) (No statutory or due process violation for individual recently detained under Section 1225(b)); *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 145 (D.D.C. 2018) (Explaining that *Mezei* remains "good law, and it dictates that for an alien who has not effected an entry into the United States" the statutory scheme is "due process as far as an alien denied entry is concerned."); *Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 219 (S.D.N.Y. 2020) (Finding itself bound to apply *Mezei* in holding that alien's "detention does not violate due process because Congress has authorized mandatory detention for immigrants in [his] circumstances and that is sufficient to satisfy due process."); *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D. N.M. 2020) (*"Mezei* and its progeny do not hold that [p]etitioner has no due-process rights; rather, the applicable statutory process shapes her procedural due process rights.  Because [p]etitioner has no statutory right to release or a bond hearing … she has no due-process right to the relief requested."); *Aslanturk v. Hott,* 459 F. Supp. 3d 681, 694 (E.D. Va. 2020) (Declining to "ignore binding, Supreme Court precedent" to award an applicant for admission a bond hearing since Section 1225(b) does not provide for such hearing.).

Other courts have held similarly, especially after the Supreme Court in *Thuraissigiam* reaffirmed its rule regarding the due process rights of applicants for admission.  *See e.g.*, *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 676 (S.D. Tex. 2021) ("When a noncitizen attempts to unlawfully cross the border as [p]etitioner did, his constitutional right to due process does not

---

our borders, and (2) the period of detention during such a proceeding is not indefinite—it will end upon the conclusion of the removal proceeding.")

extend beyond the rights provided by statute."); *St. Charles v. Barr*, 514 F. Supp. 3d 570, 579 (W.D.N.Y. 2021) (Denying habeas petition seeking a release or a bond hearing finding that "he does not have a constitutional right to any additional procedure.").

As such, this Court should apply the "century-old rule" reaffirmed in *Thuraissigiam* and conclude that Petitioner's due process rights are coextensive with the rights provided him under statute. Consequently, because Petitioner's statutory rights do not extend to release, a bond hearing or a requirement that ICE justify his detention, the Court must deny his request for release.

Explained by another district court, "the Court cannot agree that [ICE's] grace of allowing [him] to remain on parole for nearly a decade has created a due process right. It was a discretionary decision for [ICE] to grant them parole, and [ICE] had the authority to revoke that parole." *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 929 (W.D. Tex. 2018). This Court also lacks jurisdiction to review ICE's discretionary decision to revoke parole by issuing an NTA. *See Doe v. Noem*, No. 1:25-CV-10495-IT, 2025 WL 1099602, at *11 (D. Mass. Apr. 14, 2025) (Agreeing and finding the argument that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review over the decision to terminate parole as to the revocation of an individual grant of parole "unremarkable".)

   2. **Detention During the Course of Removal Proceedings is Constitutional**.

Regardless of the level of due process Petitioner is entitled to as an applicant for admission to the United States, his due process challenge to his brief detention fails as the Supreme Court has held that detention during removal proceedings, even without access to a bond hearing, is constitutional. *See Demore*, 538 U.S. at 522. In *Demore*, the Court reaffirmed its prior decisions that had "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* at 523; *Wong Wing v. U.S.*, 163 U.S. 288, 235 (1896) ("We think it

clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid").

As another session of this Court recently recognized, a brief period of detention for the purpose of removal proceedings or to effectuate removal does not violate the constitution. *See Dambrosio v. McDonald, Jr.*, No. 25-CV-10782-FDS, 2025 WL 1070058, at *2 (D. Mass. Apr. 9, 2025) (Recognizing that detention "for a period of less than three months' time … does not amount to an unconstitutional duration.").[4]  As Petitioner's detention does not violate the Constitution this Court therefore lacks authority to order Petitioner's release under 28 U.S.C. § 2241(c)(3).

**C.  Petitioner's Fourth Amendment Challenge is Improperly Raised via this Petition.**

Petitioner also raises a barebones Fourth Amendment challenge, arguing only that he "was detained and seized without process of law".  Doc. No. 1, ¶ 28.  This claim fails as ICE's arrest was supported by an administrative warrant and ICE has statutory authority to arrest an individual both with, and without, a warrant.  Exh. A, ¶ 13.  *Abel v. United States,* 362 U.S. 217, 230 (1960) ("[s]tatues authorizing administrative arrest to achieve detention pending deportation proceedings have the sanction of time."); *Ryan v. U.S. Immigr. & Customs Enf't,* 974 F.3d 9, 19 (1st Cir. 2020) ("[t]he text of the INA confers broad authority upon ICE to conduct civil arrests."); *Perez-Ramirez v. Norwood,* 322 F. Supp. 3d 1169, 1172 (D. Kan. 2018) (denying

---

[4] Respondent acknowledges that some district courts have determined that further analysis is warranted to determine if an applicant for admission is entitled to a bond hearing under the Constitution once Section 1225's mandatory detention becomes "unreasonably prolonged."  *See e.g.*, *Pierre v. Doll*, 350 F. Supp. 3d 327, 331 (M.D. Pa. 2018) (Holding that arriving aliens "have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable.").  Here, however, because Petitioner was only recently detained, no claim of unreasonably prolonged detention can be raised and therefore no further analysis as to whether a bond hearing is constitutionally warranted is necessary.

14

habeas petition and finding no Fourth Amendment violation because "the legality of an arrest of an alien based upon a civil immigration violation is well-established.").

Petitioner provides no allegations to support his claim of a Fourth Amendment violation and sets forth no caselaw to support the proposition that an order of release via a habeas petition would be the proper remedy for an alleged Fourth Amendment violation. District courts routinely hold that even assuming a Fourth Amendment violation occurred, a habeas action is not the proper means to seek a remedy and release is not an appropriate remedy because an individual's identity and their immigration status cannot be suppressed. *See e.g.*, *H.N. v. Warden, Stewart Det. Ctr.*, No. 7:21-CV-59-HL-MSH, 2021 WL 4203232, at *5 (M.D. Ga. Sept. 15, 2021) (Explaining that "even if the Court accepted Petitioner's argument that his initial detention was somehow unlawful, he is still not entitled to habeas relief."); *Jorge S. v. Sec'y of Homeland Sec.*, No. 18-CV-1842 (SRN/HB), 2018 WL 6332717, at *4 (D. Minn. Nov. 15, 2018), *report and recommendation adopted*, No. 18-CV-1842 (SRN/HB), 2018 WL 6332507 (D. Minn. Dec. 4, 2018) ("Release from Jorge S.'s *current* detention because his detention *previously* had been unlawful would be a remedy ill-fitted to the specific injury alleged.") (emphasis in original); *Amezcua-Gonzalez v. Lobato*, No. C16-979-RAJ-JPD, 2016 WL 6892934, at *2 (W.D. Wash. Oct. 6, 2016), *report and recommendation adopted sub nom. Amezcua–Gonzalez v. Lobato*, No. C16-979-RAJ, 2016 WL 6892547 (W.D. Wash. Nov. 22, 2016) (Finding that "even if petitioner's arrest amounts to an egregious Fourth Amendment violation, he is not entitled to habeas relief, and his petition should be denied.").

Instead, any claim as to unreasonable arrest must be presented by Petitioner through a motion to suppress in Immigration Court, the BIA, and ultimately to a circuit court, but not a district court. *See INS v. Lopez-Mendoza,* 468 U.S. 1032, 1050-51 (1984) (Explaining that

motions to suppress may be available in immigration proceedings for "egregious violations of the Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained.").  *See also Arias v. Rogers*, 676 F.2d 1139, 1143 (7th Cir. 1982) (No constitutional infirmity with immigration arrest because detainees could "could avail themselves of the administrative remedies" available to them to contest detention.); *Aguilar v. U.S. Immigr. & Customs Enf't Chicago Field Off*., 346 F. Supp. 3d 1174, 1189 (N.D. Ill. 2018) (same).

**D.  The Court should Deny Petitioner's Claim that a Purported Policy Violates the APA.**

The Court must deny Petitioner's undeveloped and unsupported claim that Respondents have violated the APA with a purported policy of transferring aliens to facilities outside their home states for nefarious reasons.  Doc. No. 1, ¶¶ 30-31.

This claim is improperly raised in this habeas petition as it does not pertain to whether he currently "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  Federal habeas corpus is a remedy available only to challenge the fact, duration, or legality of custody.  *Preiser v.* Rodriguez, 411 U.S. 475, 489 (1973) (reaffirming that habeas is appropriate only for claims that would result in immediate or speedier release). Petitioner's claim that ICE has adopted an unlawful policy of transferring detainees—but did not transfer him under such policy—does not pertain to whether he is currently in custody in violation of federal law and therefore cannot be considered through this habeas action.

Even if Petitioner's habeas Petition were a proper vehicle for his APA claim, Petitioner has not identified any actual policy of ICE regarding transferring noncitizen detainees, let alone a policy that amounts to final agency action.  *See* 5 U.S.C. § 704.  "For an agency action to be reviewable under the APA, it must be 'final' action[.]"  *Am. Assoc. of Univ. Profs. v. Rubio*, No.

25-cv-10685-WGY, 2025 WL 1235084, at *21 (D. Mass. Apr. 29, 2025). "To be final, agency action must be 'one by which rights and obligations have been determined' or from which 'legal consequences will flow.'" *Id*. (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

Here, Petitioner points to no actual ICE policy on point. To be sure, "[a]gency action 'need not be in writing to be judicially reviewable as a final action[.]'" *Am. Assoc. of Univ. Profs.*, 2025 WL 1235084, at *21 (quoting *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 139 (D.D.C. 2018). But Petitioner cites no evidence of the challenged policy beyond his own say so. Doc. No. 1, ¶ 30; *compare Am. Assoc. of Univ. Professors*, 2025 WL 1235084, at *4-5, 21 (concluding that plaintiffs plausibly alleged that an "ideological-deportation policy" was a "final agency action" where plaintiffs "pointed to several examples of high-level agency officials at least arguably" following such a policy). Necessarily, therefore, Petitioner has not, and cannot, sufficiently allege that the challenged policy is "the consummation of the agency's decisionmaking process." *Bennett*, 520 U.S. at 177-78. Nor can Petitioner allege a policy "by which rights and obligations have been determined' or from which 'legal consequences will flow." *Assoc. of Univ. Professors*, 2025 WL 1235084, at *21. Petitioner's APA claim fails for this reason alone.

Moreover, Petitioner does not have standing to challenge the purported policy because he does not allege that ICE has transferred him outside Massachusetts, or that ICE has imminent plans to do so. "As the Supreme Court recently explained, '[f]or a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff cannot be a mere bystander, but instead must have a personal stake in the dispute[.]'" *Am. Assoc. of Univ. Professors*, 2025 WL 1235084, at *13 (quoting *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 379 (2024)). "In order to establish standing, plaintiffs must

show[,]" among other things, "that they have suffered an 'injury in fact' that is 'concrete and particularized,' and, if based on future action, 'actual or imminent rather than conjectural or hypothetical[.]'" *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The Supreme Court has held that 'future injuries' may support standing 'if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Savino*, 453 F. Supp. 3d at 447 (quoting *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019)). Petitioner "must demonstrate standing for each claim" he asserts. *Id*. (quoting *Murthy v. Missouri*, 603 U.S. 43, 61 (2024)). Petitioner fails to allege that his transfer is "certainly impending" or even that there is a "substantial risk" of it. Accordingly, Petitioner alleges only a "conjectural or hypothetical" injury insufficient for standing as to this claim.

Regardless, Petitioner's claim is not ripe because Petitioner does not allege that ICE has transferred him outside Massachusetts. Article III of the Constitution limits the federal courts to deciding "Cases" and "Controversies." U.S. Const. art. III, § 2. To determine whether a petition presents a case or controversy, this Court must consider ripeness. *Reddy v. Foster*, 845 F.3d 493, 500-01 (1st Cir. 2017). "The 'ripeness' doctrine is applicable to actions brought pursuant to 28 U.S.C. § 2241." *Crooker v. Grondolsky*, 982 F. Supp. 2d 89, 92 n.2 (D. Mass. 2013). Petitioner "bear[s] the burden of alleging facts sufficient to demonstrate ripeness." *Reddy*, 845 F.3d at 501.

The "Supreme Court has reinforced that ripeness doctrine seeks to prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id*., 845 F.3d at 500 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). "Cases that are 'largely hypothetical . . . are seldom fit for federal judicial review.'" *Worman v. Healey*, 293 F. Supp. 3d 251, 260 (D. Mass. 2018) (Young, J.) (quoting *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 538 (1st Cir. 1995)).

Petitioner's claim poses just such a "hypothetical" claim. No "live case or controversy" exists because Petitioner does not allege that ICE has applied the challenged policy to him. *See Reddy*, 845 F.3d at 501-02 (finding a claim unripe where the complaint alleged only a "fear" of injury). And the Court cannot adjudicate the Petition based on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Reddy*, 845 F.3d at 500 (quoting *Texas*, 523 U.S. at 300).[5]

Finally, any such policy would not violate the APA as Congress provided ICE with discretion as to the detention location of individuals within its custody. Per 8 U.S.C. § 1231(g)(1), ICE "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *See Edison C. F. v. Decker*, No. CV 20-15455 (SRC), 2021 WL 1997386, at *6 (D.N.J. May 19, 2021) (Acknowledging that "Congress has provided the Government with considerable discretion in determining where to detain aliens pending removal or the outcome of removal proceedings."). ICE's placement of an alien at a facility outside of the alien's preferred geographic location does not violate federal law or the Constitution. *See Avramenkov v. I.N.S.,* 99 F. Supp. 2d 210, 214 (D. Conn. 2000) (Holding that a transfer "does not constitute a violation of plaintiff's due process or statutory rights" and that ICE "is not obligated to detain aliens where their ability to obtain representation and to present witnesses is at its greatest.").

### E.   Petitioner is Not Entitled to Bail.

Petitioner's request that this Court release him on bail pending adjudication of the merits of the Petition must be denied. For the reasons set forth throughout this memorandum, Petitioner

---

[5] Separately, Petitioner also claims that ICE's purported policy "violates the *Accardi* doctrine" but does not explain why. Doc. No. 1, ¶ 30.

has not "demonstrated a likelihood of success on the merits" of his Petition—or even "substantial claims" on the merits—for purposes of obtaining bail. *Savino v. Souza*, 453 F. Supp. 3d 441, 453, 454 n.11 (D. Mass. 2020) (citing *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972)). Moreover, the Petition does not allege "extraordinary circumstances . . . that make the grant of bail necessary to make the habeas remedy effective." *Id*. (quoting *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001)). To the contrary, Petitioner alleges that he "fears his transfer to a detention facility outside of Massachusetts … would prevent him from marrying his fiancée as well as adequately litigating his removal proceedings by limiting his access to counsel and evidence located" in Massachusetts. Doc. No. 1, ¶ 33. But Petitioner offers no indication that his transfer to another district is imminent, nor does he explain how—or to what extent—his access to his fiancé, counsel and evidence would be "limit[ed]" if he were transferred outside Massachusetts. In short, Petitioner offers no reason to think that bail is "necessary to make the habeas remedy effective." *Compare Savino*, 453 F. Supp. 3d at 453 (finding "exceptional circumstances" warranted bail for certain habeas petitioners during the "nightmarish pandemic").

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Petition as ICE's detention of Petitioner is lawful pursuant to statute, regulation, and the Constitution.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: June 13, 2025                    By:    */s/ Mark Sauter*
                                               Mark Sauter
                                               Assistant United States Attorney
                                               United States Attorney's Office
                                               1 Courthouse Way, Suite 9200
                                               Boston, MA 02210
                                               Tel.: 617-748-3347
                                               Email: mark.sauter@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

      I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated:  June 13, 2025        By:       */s/ Mark Sauter*
                                      Mark Sauter
                                      Assistant United States Attorney